Louis Edward DAVIS a.k.a. Michael Davis, Plaintiff,

v.

Edward REILLY, Nassau County Sheriff, and Dr. James Neal, Defendants.

No. 03–CV–3954(ADS)(JO).

United States District Court, E.D. New York.

July 8, 2004.

Louis Edward Davis, Pine City, NY, Plaintiff Pro Se.

Lorna B. Goodman, Nassau County Attorney by Deputy County Attorney Carl Sandel, Mineola, NY, for the Defendant Edward Reilly, Nassau County Sheriff.

No Appearance for Dr. James Neal.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The *pro se* plaintiff Louis Edward Davis aka Michael Davis ("Davis" or the "plaintiff") commenced this action against the Nassau County Sheriff Edward Reilly ("Reilly") and Dr. James Neal ("Dr. Neal"), the Medical Director of the Nassau County Correctional Center (the "NCCC"), for violation of 42 U.S.C. § 1983. Presently before the Court is a motion by Reilly to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

All facts are taken from the complaint unless otherwise stated. On April 18, 2003, while incarcerated at the NCCC, the plaintiff slipped on a wet cement floor outside of the shower area and was injured. The plaintiff claims that he was made to lie in "dirty shower water" for approximately thirty minutes until an ambulance arrived to escort him to the Nassau University Medical Center (the "Medical Center"). At the Medical Center, the plaintiff received several X-rays and a CAT scan. The treating doctor informed the plaintiff that he had sprained his neck and back. The doctor then gave the plaintiff a shot to "loosen" his stiff neck and back. Approximately four hours later, the plaintiff was returned to the NCCC.

The following day, the plaintiff complained of pains in his back and neck area when he attempted to walk around. Additionally, he claims he suffered "needle like" pains in his left testicle and sustained lacerations on the rear of his head. A doctor saw the plaintiff and informed him that his pains were normal given his fall on the previous day. The plaintiff was also given pain medication three times per day.

At some point between April, 2003 and September, 2003, the plaintiff was transferred from the NCCC to Downstate Correctional Facility. In a letter dated September 10, 2003, the plaintiff informed the Court that he was transferred to the Green Haven Correctional Facility in Stormville, New York.

On August 5, 2003, the plaintiff commenced this action against Reilly and Dr. Neal. The plaintiff claims that Reilly violated Section 1983 by failing to place shower mats and tiles in the shower area which the plaintiff claims he claims would have prevented his slip and fall from occurring. The plaintiff also alleges that Dr. Neal violated Section 1983 and the Eighth Amendment's prohibition on cruel and unusual punishment by failing to supervise and adequately train his medical staff to respond to the plaintiff's medical needs and by acting with a deliberate indifference to those needs.

Presently before the Court is a motion by Reilly pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted.

Reilly asserts, among other things, that the claims against him should be dismissed, because (1) the plaintiff's claims are barred by the Prison Litigation Reform Act of 1995 ("PLRA"); (2) the plaintiff's complaint fails to state a claim upon which relief can be granted; and (3) the plaintiff has failed to comply with New York law.

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the

facts alleged in the complaint would not entitle the plaintiff to relief. *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999); *see also Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999); *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Additionally, the issue before the Court is not whether the plaintiff's claim will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

█ Furthermore, the Court must construe a *pro se* plaintiff's complaint liberally. *See Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir. 1995) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Here, the plaintiff filed an "Affirmation in Response to Motion to Dismiss" (the "Affirmation") in which additional facts are alleged. Thus, when reviewing factual allegations, the Court may examine materials outside of the four corners of the *pro se* plaintiff's complaint. *See e.g., Supinski v. Merrill Lynch & Co.,* No. 00 Civ. 7363, 2001 WL 930779, at *1 n. 2 (E.D.N.Y. Aug. 13, 2001) ("the policy reasons favoring liberal construction of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiff's memorandum of law, at least where those allegations are consistent with the allegations in the complaint." (citations omitted)).

**B. The Prison Litigation Reform Act of 1995**

█ The Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C.1997e(a), mandates that

[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Although failure to exhaust administrative remedies is not a jurisdictional predicate under the PLRA, *see Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003), the prisoner "must pursue his challenge to the conditions in question through to the highest level of administrative review prior to his suit." *Flanagan v. Maly,* No. 99 Civ. 12336, 2002 WL 122921, at *2, 2002 U.S. Dist. LEXIS 1373, at *2 (S.D.N.Y. Jan. 29, 2002).

█ This exhaustion prerequisite, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Claims asserting "deliberate indifference" concerning medical care are allegations that fall within the exhaustion requirement of the PLRA. *See Baez v. Parks,* 02 Civ. 5821, 2004 WL 1052779, *4, 2004 U.S. Dist. LEXIS 8182, at *12–13 (S.D.N.Y. May 11, 2004) (citing *Wagnoon v. Johnson,* No. 02 Civ. 10282, 2004 WL 583764, at *2, 2004 U.S. Dist. LEXIS 4722, at *4 (S.D.N.Y. Mar. 23, 2004)) (dismissing deliberate indifference claim because inmate failed to exhaust administrative remedies finding that the claim was barred by the PLRA).

█ In this case, the plaintiff has not exhausted his administrative remedies with regard to his claims against either defendant. In the complaint, the plaintiff

acknowledges that even though there is a prisoner grievance procedure, he has not availed himself of that process. In addition, in his Affirmation the plaintiff admits that he was unaware of any requirement that he exhaust administrative remedies and, thus "inadvertently failed to do so." Aff. p. 2.

██ If a prisoner's failure to exhaust administrative remedies is merely a "temporary, curable, procedural flaw" that the plaintiff can cure by exhausting the remedies, dismissal without prejudice is appropriate. *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir.1999); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.2002). However, dismissal of a section 1983 complaint with prejudice is proper where the prisoner failed to exhaust administrative remedies available after a period of several months and those remedies are no longer available, partly because of the prisoner's being transferred to another correctional facility. *Berry v. Kerik*, 345 F.3d 126, 128 (2d Cir.2003); *see also Arnold v. State of New York*, No. 01 Civ. 2131, 2003 WL 22901052, at *2 (S.D.N.Y. Dec. 10, 2003) (dismissing complaint with prejudice because of the "inability to exhaust ... due to the time limitations contained in New York's exhaustion scheme.").

██ Here, the plaintiff had at his disposal administrative remedies but failed to employ them. Further, the plaintiff is no longer incarcerated at the NCCC and thus, the administrative remedies are unavailable. *See Berry*, 345 F.3d at 128. (noting that dismissal with prejudice is appropriate if administrative remedies are no longer available because of the prisoner has been transferred to another correctional facility). Accordingly, the plaintiff's claims are barred by the PLRA. In any event, on the merits, as set forth below, the plaintiff fails to state a claim upon which relief can be granted.

## C. Section 1983

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

██ In order to sustain a claim, the "plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993).

██ In addition, it is well-settled that the defendant's personal involvement is a prerequisite to an award of damages under Section 1983, *see McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted). A defendant is "personally involved" if he or she "directly participated in the infraction." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Also, a defendant in a supervisory capacity may be "personally involved" within the meaning of Section 1983 if the state actor (1) failed to remedy the wrong after learning of the violation through a report or appeal; (2) created or continued a custom or policy under which unconstitutional practices ensued; or (3) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

■ In this case, the plaintiff fails to allege that Reilly was directly involved in his injuries. Furthermore, to the extent that Reilly is a state actor in a supervisory role, the plaintiff fails to allege that Reilly created or allowed any custom regarding wet floors to exist or acted in a grossly negligent manner in managing the officers he supervised.

■ Reading the complaint liberally, see *Hughes,* 449 U.S. at 10, 101 S.Ct. 173, the plaintiff alleges that Reilly had notice of wet floors outside the shower area prior to the plaintiff's slip and fall. Yet even if the plaintiff could implicate Reilly personally, failure to provide shower mats does not rise to the level of a constitutional violation within the meaning of Section 1983 and, thus is not actionable. *See Jones v. Nassau County Sheriff Dep't,* 285 F.Supp.2d 322, 326 (E.D.N.Y.2003) (concluding that failure to place shower mats in the NCCC "do[es] not trigger the protections of the Fourteenth Amendment"); *Spencer v. Warden Sylvester,* No. 97 Civ. 5491, 1999 WL 61644, at *3, 1999 U.S. Dist. LEXIS 1098, at *6 (E.D.N.Y. Feb. 2, 1999) (concluding that a slip and fall claim is not actionable under Section 1983); *see also Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (stating that the Due Process Clause is not implicated when prison officials' lack of due care contributes to a pillow being left on the stairs resulting in a prisoner's injury). In *Daniels,* the Supreme Court noted:

> We think that the actions of prison custodians in leaving a pillow on the prison stairs ... are quite remote from the concerns [of the Due Process Clause]. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that an injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law. *Daniels,* 474 U.S. at 332, 106 S.Ct. 662.

Accordingly, the plaintiff's Section 1983 claim against Reilly is dismissed.

## D. The Deliberate Indifference Claim

■ As stated above, the plaintiff claims that Dr. Neal violated Section 1983 and the Eighth Amendment's prohibition on cruel and unusual punishment by failing to supervise and adequately train his medical staff to respond to the plaintiff's medical needs and by acting with a deliberate indifference to those needs. Although the plaintiff alleges that his Eighth Amendment rights were violated, this Amendment applies only to convicted prisoners. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citations omitted). The Fourteenth Amendment applies to pre-trial detainees. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citations omitted). Here, the plaintiff does not indicate whether he has already been convicted of a crime or whether he is a pre-trial detainee. Nevertheless, regardless of the academic distinction between the Eighth and Fourteenth Amendments, "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Thomas v. Nassau County Correctional Center,* 288 F.Supp.2d 333, 337 (E.D.N.Y.2003) (internal quotations omitted).

■ To establish a constitutional claim of inadequate medical care, the plaintiff must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There is a two-pronged test in determining "deliberate indifference" that includes both an objective and subjective component. *Id.; see also Wright v. Schelker,* No. 01 Civ. 2646, 2003 WL

22879803, at \*1, 2003 U.S. Dist. LEXIS 23134, at \*12 (S.D.N.Y. Oct. 27, 2003). First, the physical injury must have been "sufficiently serious," meaning that it "may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (internal quotations and citations omitted). Second, the defendant's failure to issue proper care must have "resulted from a sufficiently culpable state of mind." *Wright,* 2003 WL 22879803, at \*1, 2003 U.S. Dist. LEXIS 23134, at \*12.

 Here, the plaintiff's injuries, namely a sprained back and neck coupled with pain in the left testicle, do not constitute a serious medical condition. *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (A serious medical condition includes not only conditions affecting the plaintiff's current health problems, but also those that are "very likely to cause serious illness and needless suffering" in the ensuing weeks, months or year); *see also see also Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir.1990) (condition must be life-threatening or fast-degenerating).

 Furthermore, the plaintiff fails to allege that Dr. Neal's treatment of his injury constituted a conscious disregard of his medical condition. The plaintiff indicates that he was given x-rays, Cat–Scans, an injection of medicine to loosen his stiff neck and back and pain medication three times per day. The plaintiff also states that he is "constantly going to sick call." Compl. ¶ IV. The Court notes that even if the plaintiff could prove wrongdoing by Dr. Neal, medical malpractice does not translate to a constitutional violation simply because the injured party is a prisoner. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Rather, the "question whether an [x]-ray— or additional diagnostic techniques or forms of treatment—is indicated is a clas-

sic example of a matter for medical judgment. A medical decision not to order an [x]-ray, or like measures does not represent cruel and unusual punishment. At most it is medical malpractice...." *Estelle,* 429 U.S. at 107, 97 S.Ct. 285.

Accordingly, the because the plaintiff fails to state a claim against Dr. Neal, the Court *sua sponte* dismisses the claims against Dr. Neal. *See* PLRA § 1997e(c) (stating that the Court may, on its own motion, dismiss any action brought by a prisoner with regards to prison conditions without first requiring the exhaustion of administrative remedies if the complaint fails to state a claim upon which relief can be granted).

### E. State Law Negligence Claim

Because the federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims. *See* 28 U.S.C. 1367(c)(3) (stating that the Court may decline to exercise supplemental jurisdiction if the Court has dismissed all claims over which it had original jurisdiction); *see also Arroyo v. City of New York, et al.,* No. 99 Civ. 1458, 2003 WL 22211500, at \* 3 (S.D.N.Y. Sept. 25, 2003) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Accordingly, these claims are dismissed without prejudice.

### F. Leave to Amend

Although the Court would generally grant the plaintiff leave to replead, it is beyond doubt that the plaintiff will not be able to state facts to support a viable claim under federal law, because (1) failure to remedy a wet shower area with mats does not rise to the level of a constitutional violation and (2) a sprained back, neck, and pains in the testicular region does not rise to the level of a sufficiently serious injury.

*See Pangburn v. Culbertson,* 200 F.3d 65, 70–71 (2d Cir.1999) ("Futility is a valid reason for denying a motion to amend ... where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims.") (internal quotations and citation omitted). Accordingly, the complaint is dismissed in its entirety with prejudice.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the motion by Reilly to dismiss all of the claims is **GRANTED**; and it is further

**ORDERED**, that all of the federal claims against Reilly are dismissed with prejudice; and it is further

**ORDERED**, that the state law claims against Reilly are dismissed without prejudice; and it is further

**ORDERED**, that the Court *sua sponte* dismisses all of the federal claims against Dr. Neal with prejudice; and it is further

**ORDERED**, that the Court *sua sponte* dismisses all of the state law claims against Dr. Neal without prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**